Leo MUTZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–070 CR.

Court of Appeals of Texas, Beaumont.

July 21, 1993.

John W. Holleman, Livingston, for appellant.

Terry Brown, Dist. Atty., Livingston, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Murder. Following the jury's verdict of guilty, the trial court sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of life. Appellant raises four points on appeal, *viz:*

Ground of error No. 1: The trial court committed error by allowing into evidence oral statements made by appellant in response to custodial interrogation because said statements were not admissible under article 38.22 of the Texas Code of Criminal Procedure.

Ground of error No. 2: The trial court committed reversible error by allowing James Drury to identify the person in a telephone conversation as appellant because the voice was never properly authenticated.

Ground of error No. 3: The trial court committed error by allowing the introduction of the autopsy report performed upon the body of deceased without proof that the individual who performed the autopsy was qualified to perform the autopsy and give the opinions contained in the autopsy.

Ground of error No. 4: The trial court erred in overruling appellant's objection to continuing the trial to verdict with a jury of eleven persons.[1]

Before analyzing appellant's first point of error, a brief rendition of the facts surrounding the shooting is in order. At approximately 4:30 p.m. on June 16, 1990, Chief Deputy James Nettles and Deputy John Sanders of the Polk County Sheriff's Office made a trip out to appellant's trailer house located in Goodrich, Texas. This visit was in response to information the sheriff's office received regarding a domestic disturbance between appellant and his wife, Penny Mutz. Penny Mutz ultimately became the victim in this case. Nettles and Sanders spoke to Mrs. Mutz, who the deputies characterized as

---

1. Although appellant labels each complaint as a "ground" of error, they will be hereafter referred to as "point" of error. Tex.R.App.P. 74(d).

"very concerned" about the situation with her husband, but not "depressed, despondent or like a person who would commit suicide later." The deputies also spoke to appellant who, in a mildly intoxicated state, explained that Mrs. Mutz had recently filed for divorce and that she wanted appellant out of the trailer. Appellant informed the deputies that he had no place to go and that he was concerned that if he moved he would not receive his "monthly check." Thinking they had defused the situation, the deputies left the scene a short time later.

Later that same day, at approximately 6:30 p.m., Nettles and Sanders were dispatched back to the Mutz residence in reference to a shooting. Appellant's call to the sheriff's office dispatcher indicated that Mrs. Mutz had shot herself. Upon entering the Mutz's trailer, Nettles and Sanders observed appellant sitting at the kitchen table with the telephone receiver in hand. The deputies further observed the victim laying on the floor, on her back, with what appeared to be a gunshot wound just above her left eye, and a .22 caliber handgun resting on her chest. Appellant informed the deputies that he and the victim had argued, that the victim went into the bedroom, got her gun, came back and shot herself. At this point, Nettles checked the victim for signs of life and Sanders exited the trailer momentarily to summon an ambulance on the patrol unit's radio.

Within a matter of a few minutes, ambulance personnel had arrived and entered the trailer. At this point, Deputy Sanders requested appellant step outside the trailer in order to give the medical attendants more room in their attempts to aid the victim. Chief Deputy Nettles joined Sanders and appellant outside next to appellant's truck. Deputy Sanders read appellant his "Miranda"[2] rights and then continued to inquire about the circumstances of the shooting. After again stating that the victim retrieved the pistol from the bedroom and shot herself, appellant added that the pistol belonged to the victim, that she carried the pistol in her purse, and that appellant had used the pistol to go coon hunting earlier that day. It is the admission into evidence by the trial court of these last three pieces of appellant's story, over appellant's objection, that appellant now complains. Appellant did not testify during the pretrial hearing on his motion to suppress nor did he testify during the trial itself.

Appellant's basic contention, as we appreciate it, is that all of the evidence introduced by the State showing that it was appellant who shot the victim, and not a suicide as appellant had initially reported, was "very harmful testimony to Appellant when considered with the oral statements that the weapon was [his] wife's and she carried it in her purse, and he had used the .22 pistol to coon hunt. This testimony showed Appellant was lying to investigators and had a devastating impact on Appellant's contention that his wife committed suicide. The admitted statements cannot be deemed harmless beyond a reasonable doubt." Appellant's Brief at 9. The trial court issued a written order finding that appellant's "statements were not the product of custodial interrogation and were only investigatory statements as opposed to a confession."

Appellant refers us to *Miranda v. Arizona, supra* and Tex.Code Crim.Proc.Ann. art. 38.22, sec. 3(a) (Vernon Supp.1993)[3] as

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Article 38.22, sec. 3 provides:
   (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
   (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;
   (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the ac-

cused knowingly, intelligently, and voluntarily waives any rights set out in the warning;
   (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;
   (4) all voices on the recording are identified; and
   (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

authority for his contention that appellant was in "custody" during the questioning outside the trailer and therefore anything appellant said during "custodial interrogation" was inadmissible at trial. As both authorities hinge admissibility of oral statements on whether or not said statements occurred during "custodial interrogation," we must first determine if that was the situation appellant was in when the complained of statements were elicited by the deputies.

While the landmark case of *Miranda v. Arizona* is usually relied upon for its discussion and analysis of the right against self incrimination guaranteed under the 5th Amendment of the United States Constitution, we see the case as also touching rather significantly on the 4th Amendment protection against unreasonable search and seizure of persons or property. Notably absent under appellant's first point of error is any reference to or discussion of specific United States or Texas constitutional amendments. In fact, appellant's reliance on *Miranda v. Arizona* is done so in the following context in his brief:

> The United States Supreme Court stated, "By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise *deprived of his freedom of action in any significant way*.["] (emphasis appellant's)

Appellant's Brief at 5. However, the *Miranda* Court also provided the following:

> Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v Illinois*, 378 US 478, 492, 12 L ed[Ed.] 2d 977, 986, 84 S Ct 1758 [1765 (1964)]. When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our hold-

ing. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.

*Miranda v. Arizona, supra,* 384 U.S. at 477–478, 86 S.Ct. at 1629–1630, 16 L.Ed.2d at 725–726.

Because of the manner in which appellant has framed this issue *vis-a-vis* his authorities, and based upon the testimony of Deputies Nettles and Sanders both in the pretrial suppression hearing and during the trial itself, we see the focus of our inquiry subtly shifting away from "custodial interrogation" and toward the concept of "investigative detention." Indeed, the Supreme Court in *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), acknowledged the symbiotic relationship of *Miranda*'s "custodial interrogation" (Fifth Amendment), and the concept of "investigative detention" (Fourth Amendment) as analyzed in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Berkemer v. McCarty, supra,* 468 U.S. at 437–439, 104 S.Ct. at 3148–3149, 82 L.Ed.2d at 333–334. The *Berkemer* case involved, *inter alia,* a stop and roadside detention of the defendant by police for a minor traffic violation. While noting that the stopping of an automobile and detaining its occupants constitutes a "seizure" for Fourth Amendment purposes, the Court in *Berkemer,* with references to *Terry v. Ohio, supra,* explained:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly [footnote omitted] in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni–Ponce,* 422 US 873, 881, 45 L Ed 2d 607, 95 S Ct 2574 [2580] (1975). "[T]he stop and inquiry must be 'reasonably related in

[The State does not dispute the fact that appellant's oral statements were not electronically re-

corded.]

scope to the justification for their initiation.'" *Ibid.* (quoting *Terry v. Ohio, supra* [392 U.S.] at 29, 20 L Ed 2d 889, 88 S Ct 1868 [at 1884].) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, [footnote omitted] he must then be released. [footnote omitted] The comparatively non-threatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda.

*Berkemer v. McCarty, supra,* 468 U.S. at 439–440, 104 S.Ct. at 3149–3150, 82 L.Ed.2d at 334–335.

In *Amores v. State,* 816 S.W.2d 407 (Tex. Crim.App.1991), the Court of Criminal Appeals makes a much sharper distinction, for "seizure" purposes, between "arrests" and "investigative detentions." The Court notes that an "arrest" occurs, "when a person's liberty of movement is restricted or restrained." *Id.* at 411. Such a characterization is virtually identical to the "custodial" prong of "custodial interrogation" for *Miranda* purposes. *See, Miranda v. Arizona, supra,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. The Court in *Amores,* relying on *Terry v. Ohio, supra,* contrasts "arrest" with the lesser intrusive police procedure of "investigative detention," which the Court of Criminal Appeals notes "may be founded upon a reasonable, articulable suspicion that the person detained is connected with criminal activity" but *not* supported by the greater conclusiveness of probable cause to believe that a particular person has committed or is committing a crime. *Amores, supra,* 816 S.W.2d at 411.

This abstract explanation of "investigative detention" parallels the factual testimony of Nettles and Sanders in the instant case. Furthermore, *Amores* echoes the "on-the-scene questioning" distinction drawn by the *Miranda* Court between permissible and impermissible police interrogation with the following language:

The investigative detention contemplated by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is one during which the police are allowed to briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature.

*Amores, supra,* 816 S.W.2d at 412.

■ In the instant case, the record reflects that, at most, appellant was under noncoercive "investigative detention" at the point he was questioned outside of the trailer regarding the shooting. We agree with the holdings of the Supreme Court in *Berkemer* and the Court of Criminal Appeals in *Amores* that such detentions or seizures, when conducted in a truly investigative *and* noncoercive manner, do not rise to the level of "custodial interrogation" so as to preclude the admission into evidence of any responses or statements from the detainee as per the dictates of *Miranda.*[4] The deputies in the instant case clearly did not have facts rising to the level of probable cause to arrest appellant at the point that questioning began outside the trailer. While it was true that the testimony indicated that appellant was not free to leave, whether he had been intoxicated or not, the testimony also indicated that the deputies had not conclusively ruled out the theory of attempted suicide on the victim's part.

Findings by a trial court should not be disturbed absent a clear abuse of discretion. *Melton v. State,* 790 S.W.2d 322, 324 (Tex. Crim.App.1990). If the trial judge's decision is correct on any theory of law applicable to the case, it will be sustained, even when the trial judge gives the wrong reason for his decision. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Based upon the record before us, we cannot say that the trial

---

4. *See also, Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988).

court clearly abused its discretion in finding that the statements were "investigatory" in nature and not the product of questioning while appellant was in "custody" or under arrest. Appellant's first point of error is overruled.

Appellant's second point of error complains of the admission of comments allegedly made by appellant during a telephone conversation with the witness, James Drury. Appellant argues that said comments were not admissible under TEX.R.CRIM.EVID. 901(b)(5). Rule 901 is entitled, "Requirement of Authentication or Identification." Appellant's brief attempts to explain the proper applicability of Rule 901 as follows:

> Rule 901(a) of the *Texas Rules of Criminal Evidence* requires authentication of (sic) identification as a condition precedent to admissibility of a voice. Rule 901(b)(5) states *"Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical and electronic transmission or recording by opinion based upon hearing the voice at any time under circumstances connecting [it] with the alleged speaker."

The strict application of Rule 901(b)(5) that appellant would have us make to the facts of the instant case is not warranted if the clear language of Rule 901(a) and (b) is considered. Rule 901(a) is entitled, "General provision.", and states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by *evidence sufficient to support a finding that the matter in question is what its proponent claims."* (emphasis added) Furthermore, Rule 901(b), entitled "Illustrations.", provides: *"By way of illustration only, and not by way of limitation,* the following are *examples* of authentication or identification conforming with the requirements of this rule:...." (emphasis added) It is clear to us that "illustration" (b)(5) of Rule 901 is not to be given the talismanic power that appellant would have us place upon it. If we read Rule 901 correctly, the illustrations contained under subpart (b) are by no means exclusive of the methods of proof sufficient to authenticate or identify the types of evidence to which they refer. They are *illustrations only,* and *not limitations.*

■ In the instant case, appellant claims that the witness, James Drury, "never stated he had previously talked to Appellant in person or that the talker identified himself." Appellant's Brief at 23. Again, said claim is grounded in a very strict application of Rule 901 to the facts in evidence. As we view the record before us, we see that both appellant's ex-wife, Thelma Mutz, and her "son-in-law," James Drury, made in-court identifications of appellant, and both testified that on the day of the murder, James Drury telephoned appellant. Drury testified that he had been "going" with Thelma Mutz's daughter for seven years. Taking into account Thelma Mutz's testimony that she and appellant had been married from December of 1988 to April of 1990, Drury's seven years with Thelma Mutz's daughter would have included the years that appellant and Thelma were married. It is certainly reasonable to infer that one who is considered a "son-in-law" would be familiar with and could recognize the voice of an ex-"father-in-law." Nevertheless, Drury was asked specifically by the State's attorney if he (Drury) recognized appellant's voice on the other end of the telephone and Drury answered, "Yes, sir." We find that Drury's testimony that appellant referred to the victim as a "little bitch," and that appellant told Drury that he (appellant) had a weapon in his boot, was admissible as the combined testimony of Drury and Thelma Mutz was "sufficient to support a finding that the matter in question is what its proponent [the State] claims." *See* Rule 901(a), *supra.* The trial court did not err in admitting appellant's comments through the witness, James Drury. Point of error two is overruled.

■ Appellant's third point of error complains of the introduction of the autopsy report during the State's case in chief. The State's expert witness at trial, Dr. William Korndorffer, testified that a Dr. Cowan was the physician who conducted the actual autopsy of the victim. Dr. Korndorffer testified that, although he did not personally attend the autopsy, the autopsy was performed by Dr. Cowan under his (Dr. Korndorffer's) direction and that he (Dr. Korndorffer) was

present when the organs were presented, and that he (Dr. Korndorffer) saw the evidence. Appellant's objection to the admission of the written autopsy report, State's Exhibit 21, occurred as follows:

> MR. HOLLEMAN (for appellant): Your Honor, I renew my objection to the introduction of State's Exhibit No. 21. The proper predicate has not been set at this time for the introduction of this.
>
> MR. HOLLEMAN: No, sir.[5]
>
> THE COURT: Just objecting to the entire?
>
> MR. HOLLEMAN: First, I object to the entire exhibit, Your Honor, in that it has not been shown—I don't think it's been properly authenticated to the introduction through this witness at this time, Your Honor, proper predicate has not laid. (sic)
>
> THE COURT: I'm going to, for the record I'm going to sustain the objection to the last two pages of the report but overrule the rest of it. Admitted.

An objection to the admission of evidence must be reasonably specific so as to apprise the trial court of its legal basis. A mere objection based on improper predicate requires trial counsel to inform the trial court exactly how the predicate is deficient. *Jones v. State*, 825 S.W.2d 470, 472 (Tex.App.—Corpus Christi 1991, pet. ref'd); *Cartwright v. State*, 807 S.W.2d 654, 656 (Tex.App.—Beaumont 1991), *aff'd*, 833 S.W.2d 134 (Tex. Crim.App.1992). Error, if any, was waived by appellant for failure to make a more specific objection. *Jones, supra.* Point of error three is overruled.

The entirety of appellant's "Argument And Authorities" under his final point of error is set out in his brief as follows:

> Article V, Section 13 of the Texas Constitution and Article 36.29 of the *Texas Code of Criminal Procedure* states that each felony verdict must be returned by twelve jurors unless one juror dies or become (sic)

disabled from sitting. Since the Court made no finding of disability of the juror in the record and there is no evidence to support such a finding, it was error for the Court to allow the eleven person jury to return a verdict so this case should be reversed.

Neither TEX. CONST. art. V, sec. 13, nor TEX.CODE CRIM.PROC.ANN. art. 36.29 (Vernon Supp.1993) require *on their face* a formal finding by the trial court that a juror has become disabled in some specific way so as to permit either or both provisions from taking effect. Appellant does not provide us with case authority to support his contention. Consequently, we consider this point of error to be inadequately briefed and will not address it. *Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992); TEX. R.APP.P. 74(f). Point of error four is overruled, and the judgment and sentence of the trial court is affirmed.

AFFIRMED.

---

5. If, at this point, the reader notes the appearance that some portion of the statement of facts is missing, we would tend to agree. Our reading of the statement of facts indicates that this is not an isolated gaffe. As it is appellant's burden to see that a sufficient record is presented to show

error requiring reversal, and since there is no complaint from appellant with regard to the record, we will presume that an adequate record has been provided to enable us to rule on all of appellant's points of error.