Mark Anthony SCHERL, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00132–CR.

Court of Appeals of Texas,
Texarkana.

Argued July 28, 1999.

Decided Oct. 21, 1999.

Melvyn Carson Bruder, Dallas, for appellant.

Donald G. Davis, Asst. Dist. Atty., Appellate Section, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Mark Scherl was charged with driving while intoxicated. A jury convicted him, and the trial court assessed punishment at 180 days' confinement in the county jail, twenty-four months of community supervision, and a fine of $750.00. Scherl appeals, contending that the trial court violated Texas Rule of Evidence 702 by: (1) admitting into evidence his intoxilyzer test results without any proof that the scientific theory underlying the Intoxilyzer 5000 is reliable, and (2) failing to conduct a hearing, outside the presence of the jury, to determine the admissibility of the intoxilyzer test results.

On the occasion in question, Carrollton police officer Andrew Clark observed a motor vehicle traveling on a public road in excess of the speed limit. The officer pursued the vehicle, and while in pursuit he observed the vehicle run a red light and narrowly miss hitting another vehicle. Clark activated his emergency lights and stopped the vehicle. Upon approaching the vehicle, the officer detected a very strong odor of alcoholic beverage coming from the driver, Mark Scherl. Suspecting intoxication, Clark administered a number of field sobriety tests,[1] all of which Scherl failed. Scherl was placed under arrest for driving while intoxicated and transported to the police station, where he was interviewed on videotape and where he provided a breath specimen for a blood-alcohol concentration test on an Intoxilyzer 5000 instrument.

Kathleen Zader, a detention officer and certified intoxilyzer operator, testified that she administered an intoxilyzer test to Scherl shortly after his arrest. Zader identified several exhibits as records of Scherl's invalid test slips and also identified a blank test slip. These exhibits, two through five, were admitted into evidence over Scherl's objection that they were "not shown to be admissible under Rule 702."

Lisa Fondren, a certified technical supervisor of the Intoxilyzer 5000, testified that she understood the scientific theory and operation of the Intoxilyzer 5000. Fondren testified that she periodically inspected the Intoxilyzer 5000 in question and that the instrument was certified and working properly at the time of the tests recorded in exhibits two through six. Fondren further testified that exhibit six was the result of a test performed on Scherl's breath. This exhibit was admitted over Scherl's objection that "[t]here has been no showing of admissibility required by Rule 702 as required by Kelly, Heartman [sic], and Dabner [sic]." Fondren then explained the scientific technique of utilizing the Intoxilyzer 5000 and stated that Scherl's test results showed readings of .153 and .155 grams of alcohol per 210 liters of breath.

■ Texas Rule of Evidence 702 provides that, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. The Texas Court of Criminal Appeals has interpreted Rule 702 so as to require the proponent of scientific evidence to prove, by clear and convincing evidence, that the evidence is both relevant and reliable. *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Crim.App.1992). To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theo-

---

1. Clark testified that he administered the following tests: the horizontal gaze nystagmus, the one-legged stand, and the walk-and-turn. The officer also testified that he smelled alcohol on Scherl's breath, his speech was slurred, his eyes were bloodshot, and Scherl exhibited significant swaying during the instruction periods of the sobriety tests.

ry must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Hartman v. State,* 946 S.W.2d 60, 62 (Tex.Crim.App. 1997), *citing Kelly,* 824 S.W.2d at 573; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under Texas Rule of Evidence 104(a) and (c)[2] and Rule 702, all three criteria must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted. *Kelly,* 824 S.W.2d at 573.

■ The first issue we must determine is whether the trial court committed error by admitting Scherl's intoxilyzer test results into evidence without proof of the reliability of the scientific theory underlying the Intoxilyzer 5000. We review the trial court's admission of scientific evidence under an abuse of discretion standard. *Kelly,* 824 S.W.2d at 574.

Scherl objected to the intoxilyzer evidence when it was offered at trial on the basis that it was inadmissible under Rule 702, *Daubert, Kelly,* and *Hartman.* However, to preserve error an objection to the admission of evidence must state the specific grounds for the objection, if the specific grounds are not apparent from the context. Tex.R. Evid. 103(a); Tex.R. App. P. 33.1; *Bird v. State,* 692 S.W.2d 65, 70

(Tex.Crim.App.1985). An objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error. *Bird,* 692 S.W.2d at 70; *Mutz v. State,* 862 S.W.2d 24, 30 (Tex.App.-Beaumont 1993, pet. ref'd). Rule 702, *Daubert, Kelly,* and *Hartman* cover numerous requirements and guidelines for the admission of expert testimony. An objection based on Rule 702 and these cases alone is effectively a general objection to an improper predicate and is by no means specific.[3] Scherl's objection, without more specificity, did not adequately inform the trial court of any complaint upon which it might rule. Therefore, we conclude that no specific complaint about the reliability of the evidence was preserved for appellate review.

■ Further, assuming that Scherl did specifically object to the reliability of the scientific theory underlying the intoxilyzer, the trial court did not commit error by admitting the intoxilyzer test results into evidence. The Legislature has determined that intoxilyzer test results are admissible when performed in accordance with the Transportation Code and the Texas Department of Public Safety regulations. *See* Tex. Transp. Code Ann. § 724.064 (Vernon 1999);[4] 37 Tex. Admin. Code, Ch. 19 (D.P.S. Breath Alcohol Testing Regulations). Absent constitutional

2. Tex.R. Evid. 104 provides in relevant part:

(a) **Questions of Admissibility Generally.** Preliminary questions concerning the qualification of a person to be a witness ... or the admissibility of evidence shall be determined by the court, ....

....

(c) **Hearing of Jury.** In a criminal case, a hearing on the admissibility of a confession shall be conducted out of the hearing of the jury. All other ... hearings on preliminary matters shall be conducted out of the hearing of the jury when the interests of justice so require....

3. Based on the objection made, how was the trial judge to know if Scherl was objecting because: (1) the judge failed to conduct a hearing outside the presence of the jury, or (2) the witness was not "qualified as an expert by knowledge, skill, experience, training, or

education," or (3) the witness's testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue" and therefore was not relevant, or (4) the witness's testimony was not reliable because (a) the underlying scientific theory is not valid, or (b) the technique applying the theory is not valid, or (c) the technique was not properly applied on the occasion in question? *See* Texas Rule of Evidence 702, *Daubert, Kelly,* and *Hartman.*

4. On the trial of a criminal proceeding arising out of an offense under Chapter 49 of the Penal Code, involving the operation of a motor vehicle, evidence of the alcohol concentration as shown by analysis of a specimen of the person's blood, breath, or urine or any other bodily substance taken at the request or order of a peace officer is admissible. Tex. Transp. Code Ann. § 724.064 (Vernon 1999).

concerns, the Legislature can establish the reliability of scientific theories or techniques through statutory enactment, and the courts are bound to follow such enactments.[5] *See* Tex.R. Evid. 101(c); *Gross v. State*, 165 Tex.Crim. 463, 308 S.W.2d 54 (1957).

Scherl contends that the Texas Court of Criminal Appeals determined in *Hartman* that the proponent of intoxilyzer test results must establish the reliability of the scientific theory underlying the intoxilyzer. However, the Texas Court of Criminal Appeals has no inherent power to promulgate rules of evidence, and the Legislature has specifically limited the court to making rules which do not abridge, enlarge, or modify the substantive rights of litigants, citing Tex. Const. art. V, § 31(c) and Tex. Gov't Code Ann. § 22.108 (Vernon 1988 & Supp.1999), § 22.109 (Vernon 1988). Moreover, Rule of Evidence 101(c) provides that when a statute conflicts with a rule of evidence, the statute prevails, but "[w]here possible, inconsistency is to be removed by reasonable construction." Tex.R. Evid. 101(c); *see Smith v. State*, 5 S.W.3d 673, 676 (Tex.Crim.App.1999). Hence, to the extent that Rule of Evidence 104(a) and (c) and Rule 702, as interpreted by the Texas Court of Criminal Appeals in *Kelly* and *Hartman*, require a predicate for intoxilyzer test results which irreconcilably conflicts with that required by the statutes, the statutes will prevail.

In *Hartman*, the Texas Court of Criminal Appeals ruled that the *Kelly* standard applies to testimony *interpreting and extrapolating* intoxilyzer test results and, thus, trial courts must determine the relevance and reliability of such testimony. *Hartman*, 946 S.W.2d 60. In the Trans-

portation Code, the Legislature has recognized the reliability of the scientific theory and technique underlying breath alcohol tests when performed in accordance with the specified rules and regulations. Tex. Transp. Code Ann. § 724.064; *Stevenson v. State*, 895 S.W.2d 694, 696 (Tex.Crim. App.1995). We perceive no conflict between this statute and the Texas Court of Criminal Appeals' construction of the rules of evidence in *Kelly* and *Hartman*.

We agree with Judge Keller's analysis of this matter in her concurrence in *Hartman*:

> The Legislature has enacted a statute governing the admissibility of breath alcohol tests. Such tests are admissible so long as they are "performed according to the rules of the Texas Department of Public Safety and by an individual possessing a valid certificate issued by the Texas Department of Public Safety for that purpose." Texas Revised Statutes, Article 6701l–5, § 3(b) (Vernon's Supp.1993) (current version at Tex. Transp. Code Ann. § 724.016(a) (Vernon 1999)). *The Legislature has statutorily dispensed with any need to analyze the validity of the theory and technique behind the intoxilizer* [sic]. The only open issue for the trial court to address is whether a test in a particular case satisfies the statutory requirements, i.e. the third prong of [reliability in] Kelly—whether the technique was properly applied on the occasion in question.[6]

*Hartman*, 946 S.W.2d at 64 (Keller, J., concurring) (emphasis added). Therefore, we conclude that the trial court did not abuse its discretion in admitting the intoxilyzer test results into evidence without proof that the underlying scientific theory

---

5. Even absent legislative action, a court may take judicial notice of the reliability of a well-established scientific theory and technique, such as the theory and technique underlying the intoxilyzer. *Emerson v. State*, 880 S.W.2d 759, 764 (Tex.Crim.App.1994); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 11, 113 S.Ct. 2786, 125

L.Ed.2d 469, 482 n. 11 (1993). However, because the Legislature has already spoken as to the reliability of intoxilyzer test results, judicial notice is unnecessary in this case.

6. This is the only predicate required for the introduction of breath test results showing alcohol concentration of a subject's breath.

is reliable. The Legislature has conclusively established the reliability of the scientific theory underlying breath alcohol tests.

■ The second issue is whether the trial court abused its discretion in failing to hold a hearing outside the presence of the jury to determine the admissibility of the intoxilyzer evidence. Scherl argues that, prior to trial, he requested a gatekeeper hearing concerning the admissibility of all intoxilyzer evidence. The record shows, however, that what he filed was a motion in limine requesting, among other things, that:

> 3 .... prior to the trial of this case, or prior to the admission of any evidence relating to the administration or the result of any test that is the subject of this motion, the Court conduct a hearing for the purposes of determining the reliability, the relevance, and the admissibility of any such evidence pursuant to Rules 104(a), 402, 403, and 702, Tex.R.Crim. Evi. [sic]

The record further shows that Scherl never obtained a ruling on his motion in limine. Immediately after Scherl was arraigned and before jury selection began, the following dialogue (in relevant part) occurred between the court and Scherl's counsel:

> THE COURT: Mr. Bruder, we have got several motions here.... A Motion in Limine as to the scientific test, and I will rule on that at the time they proffer....
>
> ....
>
> Mr. Bruder, anything that we need to put on the record as far as the motions that you have at this point.
>
> [COUNSEL]: The only request that I have is before the State makes mention in front of the jury of the existence of

any test or intoxilyzer test, that a determination be made under 702.

> THE COURT: Mr. Bruder, you may recall that I voir dire the jury on all three ways that the State may prove someone is intoxicated. I don't allow either party to inform the jury whether we have breath test, blood test, urine test, or no test. I simply voir dire the jury on all possibilities under the law.
>
> [COUNSEL]: I'm talking about during trial.
>
> THE COURT: Very good. We'll seat the jury in a few minutes.

■ It is well settled that a motion in limine does not preserve error for appeal. *Willis v. State,* 785 S.W.2d 378, 384 (Tex. Crim.App.1989). For error to be preserved with regard to the subject matter of a motion in limine, the proponent of the motion must make an objection on the proper grounds when the subject is raised during trial. *Harrington v. State,* 547 S.W.2d 616, 620 (Tex.Crim.App.1977). Although Scherl objected to the intoxilyzer evidence when it was offered on the basis of Rule 702, *Daubert, Kelly,* and *Hartman,* he never again specifically requested a hearing outside the presence of the jury. An objection to the admission of evidence must state the specific grounds for the objection, if the specific grounds are not apparent from the context. Tex.R. Evid. 103(a); Tex.R. App. P. 33.1; *Bird,* 692 S.W.2d at 70. As we stated above, Rule 702, *Daubert, Kelly,* and *Hartman* cover numerous requirements and guidelines to aid the trial court in determining the admissibility of expert testimony. Scherl's objection based on Rule 702 and these cases alone was by no means specific.[7]

■ Also, Scherl's objection was untimely.[8] In our system of adjudication,

---

7. *See* discussion *supra* note 3.

8. Scherl's first Rule 702 objection was to the invalid and blank test slips. At the time of the objection, the proper predicate had already been laid for such evidence. *See Kercho v. State,* 948 S.W.2d 34 (Tex.App.-Houston [14th

Dist.] 1997, pet. ref'd). Scherl's second and third objections were to Scherl's intoxilyzer test results. Such evidence required an additional predicate, but such predicate had also been laid at the time of Scherl's objections. *See supra* text accompanying note 6.

procedural rights are generally forfeited by a failure to properly insist upon such rights at a time when they can be implemented. *Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App.1993). Unless a litigant moves to avail himself of a gatekeeper hearing in a timely manner, he forfeits his right to such a hearing. The trial court was not required to conduct a gatekeeper hearing because the State had already met its burden for admissibility prior to the time of Scherl's objection.[9] Therefore, we conclude that Scherl did not preserve error and thereby forfeited his right to a gatekeeper hearing by failing to make a timely and specific request or objection.

 Further, even if error had been preserved, such error would not require reversal if it was harmless. Texas Rule of Appellate Procedure 44.2 governs how harm is assessed for errors found in criminal cases.[10] The failure to hold a hearing would be a nonconstitutional error and would be considered harmless if this Court, after examining the record as a whole, was reasonably assured that the alleged error did not influence the jury verdict or had but a slight effect. *See Chisum v. State,* 988 S.W.2d 244 (Tex. App.-Texarkana 1998, pet. ref'd); *Cavazos v. State,* 969 S.W.2d 454, 457 (Tex.App.-Corpus Christi 1998, pet. ref'd); *see also Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

After reviewing all of the evidence, we conclude that, even if error had been preserved, the failure to hold a gatekeeper hearing was harmless. We have determined that the intoxilyzer evidence was ultimately admissible; therefore, we cannot say that the failure to hold a hearing

had any influence or effect on the jury's verdict. Remanding this case for a new trial to hold a gatekeeper hearing, for what has already been determined to be admissible evidence, would amount to a waste of judicial time. Scherl's second point of error is overruled.

The judgment of the trial court is affirmed.

---

9. The purpose of conducting the hearing outside the jury's presence is to allow the trial judge to determine whether the requirements for admissibility can be met, while shielding the jury from hearing potentially prejudicial and inadmissible evidence. In our case, the requirements for admissibility were met at the time Scherl lodged his objection and there was no need to conduct a hearing.

10. Tex.R.App. P. 44.2 provides in relevant part:

(a) *Constitutional Error.* If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

(b) *Other Errors.* Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.