**AFFIRMED; and Opinion Filed October 14, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00548-CR**

**No. 05-12-00549-CR**

**JUAN JOSE VAZQUEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 219-82231-2011 and 219-82232-2011**

## MEMORANDUM OPINION
Before Justices O'Neill, Lang-Miers, and Evans
Opinion by Justice Lang-Miers

The State filed two indictments against appellant Juan Jose Vazquez, each alleging multiple counts and degrees of sexual assault of a child, and each requiring the State to prove the victim was either under age fourteen or under age seventeen. Appellant pleaded not guilty, and all charges were tried together to a jury. The jury found appellant guilty of continuous sexual abuse of a child, aggravated sexual assault of a child, sexual assault of a child, and two counts of indecency with a child. The jury acquitted appellant of one count of sexual assault of a child. The jury assessed punishment at life imprisonment for each of the offenses of continuous sexual abuse of a child and aggravated sexual assault of a child, and twenty years in prison for each of the offenses of sexual assault of a child and indecency with a child. The trial court sentenced appellant according to the jury's verdicts and rendered four judgments in the two cases.

In six issues on appeal, appellant argues that the evidence is insufficient to support the convictions for continuous sexual abuse of a child, aggravated sexual assault of a child, and one count of indecency with a child; double jeopardy bars some of the convictions; and the trial court abused its discretion by admitting certain evidence. For the following reasons, we affirm the trial court's judgments.

## I. BACKGROUND

I.V. was sixteen years old when she testified that appellant, her father, sexually abused her from the time she was seven or eight years old until she was about fourteen years old. She said the abuse started when the family lived in a one-bedroom apartment in Plano, Texas, and that "the first time . . . stuck with [her]." She said her mother was at work and her younger sister was watching television. Appellant asked I.V. to follow him into the bedroom. He took her shirt off and asked her in Spanish if she "wanted to see his bird." She said yes because she did not know appellant was referring to his "private area." She said appellant made her "touch his private area and he touched [her]" on her shoulders and rubbed her breast. She said appellant grabbed her hand and made her touch his "private thing."

I.V. testified that the family moved into a house in Allen before she started third grade, which would have been around 2003 or 2004. The house in Allen had two living areas; appellant kept his clothes in one of the living areas because he slept there if he and I.V.'s mother were having an argument. The house also had three bedrooms—a master and a bedroom each for I.V. and her sister. I.V. testified that appellant's sexual abuse occurred more often after they moved to the house in Allen, she thought because her mother and appellant had more arguments and her mother was not around as often. I.V. said appellant would make sure her sister was occupied and her mother was gone or in the shower and then would ask I.V. "to go either to my room in my closet or my mom's closet or in the living room where he kept all his clothes." She said

–2–

appellant "asked me to masturbate him, for him while he was touching me. And at that time, yeah, something would come out of him. It was sperm." She said she was old enough at that time to know what sperm was and described it as "a creamy white color . . . slimy and sticky."

She said at times appellant touched her "with his hand, touching [her] skin and [her] breast or he was massaging [her] on [her] shoulders or he would touch [her] butt." She said appellant also touched her "front part of the front section," which she said was her "genital area," with his hand on "many occasions." When appellant made her touch his penis, she said "something [would] come out of his penis" and this happened "on many occasions" in her bedroom closet. She said the semen "would fall on [her] skin or on [her] carpet" "[l]ike on [her] breasts . . . [h]e would make it fall there or on [her] belly."

I.V. said appellant would also "put his penis between [her] legs and then he told [her] to masturbate it until sperm [came] out and it would fall on the carpet in [her] mom's closet." She said "[i]t happened a lot in – it was more often where his clothes were in the living room." She said the floor in the living room had been carpeted at one time but then the carpet was removed. She said "there was a time when he forced [her] to put [her] mouth on his penis." Appellant "grabbed [her] head and basically shoved his penis in [her] mouth." I.V. could not remember how old she was then, but she remembered that it happened in the living room. She also said appellant touched her "[i]n [her] girl section," in her "genital area," on her "butt" and "his penis would touch [her] area in [her] buttocks or anus . . . as well as [her] genital area" on "many occasions."

I.V. said sometimes she and appellant faced each other and other times she faced away from appellant while the abuse occurred. She testified that when she and appellant were facing each other, appellant's penis would touch her "[o]n like the line, under me," which she agreed was "the line of [her] female sexual organ," her "genital area." I.V. testified that appellant

–3–

"would put his penis between [her] legs" from both in front of her and from behind her, and "stuff [would] come out of his penis on those occasions." She also said when appellant had her masturbate him or when his penis was between her legs, his "breathing got – you know when you run a lot and you start to breath harder, that was the way he would breathe."

I.V. testified that she did not remember "every single time [appellant] did something," but she did remember "it happening a lot" and more often after the family moved to Allen, which was before she began third grade. I.V. testified that she turned fourteen in September 2009 and that "many of these things happened when [she was] under" fourteen years old and in the seventh and part of the eighth grades. She said she "started fighting back" when she was fourteen years old because appellant "was trying to put his penis inside me, penetrate me and [she] pushed him and after that [she] pushed back." I.V. testified that the last time appellant "did something" she was in ninth grade, or school year 2010 to 2011.

I.V. explained to the jury how she came to tell her mother about the abuse. She testified that when she was a freshman in high school, appellant came home drunk, and he and her mother got into an argument "like usual." She heard her mother scream, so she went into the living room and saw appellant beating her mother. I.V. pushed appellant off her mother. Appellant fell, got mad, and knocked I.V. down. I.V. told her mother that she did not "have to put up with [appellant]. He has been abusing me for too long of a time." Appellant said "it wasn't true" and asked I.V.'s mother not to call the police because she "didn't know what he was capable of doing[.]" I.V.'s mother told appellant to leave, and he did; it was November 11, 2010.

I.V. testified that she knew appellant had tried "to run away with some chick," because he told I.V. and her sister that he did not want to leave without telling them goodbye. But I.V.'s sister told their mother, and their mother confronted appellant and the other woman. When appellant's plan to leave with the other woman did not work out, "that's when he approached

–4–

[I.V.]" for sex. I.V. said appellant told her that her "mom didn't approach him as a wife" and "wouldn't . . . do what a wife should do." She said she thought appellant chose her to sexually abuse instead of her sister because her sister was the one who told their mother about appellant's plan to leave the country with the other woman, so I.V. said she was "guessing he thought [her] sister would also tell [their] mom about it if he ever touched her."

During the investigation of the case, the police searched the two closets where I.V. said the abuse occurred and found biological material that was collected for testing. The criminalist collecting the evidence found "such a large amount" of biological evidence on the carpet in I.V.'s closet that he "collected the entire carpet that was in the closet." Some of the stains on the carpet from both closets tested positive for semen. The forensic scientist compared the DNA on the carpet from each closet to appellant's known DNA sample and determined that appellant's DNA was consistent with the DNA on the carpets. She testified that "the probability of selecting someone at random who could be the source of these sperm cell fractions from both carpet stains is 1 in 4.876 quintillion for Caucasians, 1 in 3.3 quintillion for blacks and 1 in 59.7 quadrillion for Hispanics." She testified that the approximate world population is 6.8 billion, meaning that "to a reasonable degree of scientific certainty . . . [appellant] is the source of those stains" in both the master bedroom closet and I.V.'s closet. I.V.'s mother testified that she and appellant never had sex in I.V.'s closet.

The forensic interviewer from the child advocacy center who interviewed I.V. testified that I.V. was consistent about what happened throughout the interview, was able to provide general and sensory details, and did not show any signs of having been coached. She said I.V. was not able to tell her specific dates when the abuse occurred, but I.V. said "it started when she was like six or seven and it kept going." The pediatric nurse practitioner who physically examined I.V. testified that the exam was normal with no obvious trauma. She said it was not

unusual for a child to have a normal exam because often a child delays telling anyone about the abuse and any trauma probably would have healed by that time.

Appellant rested without calling witnesses.

## II. SUFFICIENCY OF THE EVIDENCE

In issues one, two, and three, appellant argues that the evidence is insufficient to support the convictions for, respectively, continuous sexual abuse of a child, aggravated sexual assault of a child, and one count of indecency with a child.

### A. Standard of Review

When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id*. If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). This standard is the same for both direct and circumstantial evidence. *Id*.

### B. Continuous Sexual Abuse of a Child

In issue one, appellant argues that the evidence is insufficient to support the conviction for continuous sexual abuse of a child.

The offense of continuous sexual abuse of a child became effective on September 1, 2007. Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1127, 1148 (amended 2011) (current version at TEX. PENAL CODE ANN. § 21.02 (West Supp. 2012)). I.V. turned age fourteen on September 22, 2009.

A person commits the offense of continuous sexual abuse of a child if the person commits two or more acts of sexual abuse during a period that is thirty or more days in duration and the victim is a child younger than age fourteen and the actor is age seventeen or older. TEX. PENAL CODE ANN. § 21.02(a). The statute defines "acts of sexual abuse" as including:

> (2) indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child;
>
> (3) sexual assault under Section 22.011;
>
> (4) aggravated sexual assault under Section 22.021[.]

*Id.* § 21.02(c)(2)–(4).

A jury need not agree unanimously on which of the specific acts of sexual abuse the actor committed or the exact date those acts were committed. *Id.* § 21.02(d) (West 2011). It is sufficient if the jury agrees unanimously that the actor committed two or more acts of sexual abuse during a span of thirty or more days. *Id.*

The State alleged that appellant, during a period that was thirty days or more in duration between September 1, 2007, and September 21, 2009, committed two or more of the following acts of sexual abuse against I.V.:

(1) aggravated sexual assault of a child by intentionally and knowingly causing I.V.'s sexual organ to contact appellant's sexual organ when I.V. was under fourteen years old,

(2) aggravated sexual assault of a child by intentionally and knowingly causing the penetration of I.V.'s mouth by appellant's sexual organ when I.V. was under fourteen years old,

(3) indecency with a child by intentionally and knowingly, with the intent to arouse and gratify his sexual desire, engaging in sexual contact by causing I.V.'s hand to touch appellant's genitals when I.V. was under seventeen years old,

(4) indecency with a child by intentionally and knowingly, with the intent to arouse and gratify his sexual desire, engaging in sexual contact by touching part of I.V.'s genitals with appellant's hand when I.V. was under seventeen years old,

(5) indecency with a child by intentionally and knowingly, with the intent to arouse and gratify his sexual desire, engaging in sexual contact by touching I.V.'s anus with appellant's hand when I.V. was under seventeen years old, and/or

(6) aggravated sexual assault of a child by intentionally and knowingly causing I.V.'s sexual organ to contact appellant's mouth when I.V. was under fourteen years old.

Because the statute was enacted in 2007 and I.V. turned fourteen in 2009, the State was required to prove that the offense occurred between September 1, 2007, and September 21, 2009. Appellant argues that the State did not carry its burden. He contends that I.V. was not specific about any dates and to the extent she mentioned dates, "most of them were in around 2001 and 2002." He cites I.V.'s testimony where she said "she was 'in say *maybe* middle school[,] *like* eighth grade or seventh grade or *something like that*, [when] any of this was still going on[.]'" And he contends that I.V.'s testimony does not show "what 'any of this' refers to." He also argues that the State's "line of questioning is simply too inexact to establish any of the alleged acts required" to convict him of continuous sexual abuse of a child. And he contends that even if a jury believed I.V.'s testimony, "there is, still, simply no way, other than to guess, to know what she meant." We disagree.

The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2012); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd). A child victim is not required to be specific about the dates the abuse occurred. *See Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006) ("Especially where young children are involved, we have cautioned that courts

cannot impose unrealistic expectations regarding proof of when an offense actually occurred[.]"); *Sledge v. State*, 953 S.W.2d 253, 256 n.8 (Tex. Crim. App. 1997) ("[I]t is not often that a child knows, even within a few days, the date that she was sexually assaulted. . . . In this case, for instance, the child victim was repeatedly sexually assaulted over a period of seven years, but she never could name an exact date of any of the offenses."); *Williams v. State*, 305 S.W.3d 886, 890 (Tex. App.—Texarkana 2010, no pet.).

Although I.V. did not testify about specific dates when the abuse occurred, she said the abuse happened "a lot," happened more often after the family moved to Allen in 2003, and continued into her ninth grade year, which was after she turned fourteen. I.V. also described how appellant touched the "line" of her "front section" or "girl section" with his penis; how he touched her "line" or her "genital area" with his hand; and how he made her "masturbate him" with her hand. The context of I.V.'s testimony showed that she was describing her female sexual organ when she referred to the "line," her "front section," her "girl section," and her "genital area." We conclude that a rational jury could have found the State proved the elements of continuous sexual abuse of a child beyond a reasonable doubt. We resolve issue one against appellant.

### C. Aggravated Sexual Assault of a Child

In issue two, appellant argues that the evidence is insufficient to support the conviction for aggravated sexual assault of a child.

As alleged in the indictment, a person commits aggravated sexual assault of a child if he intentionally and knowingly causes a child's sexual organ to contact the actor's sexual organ and the child is younger than fourteen years of age at the time. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B).

Appellant argues that I.V. "never testifie[d] that his sexual organ touched her female sexual organ but rather that his penis would touch her 'genital area,' whatever that is." And he argues that even if "genital area" is specific enough to prove "sexual-organ-to-sexual-organ contact," I.V. did not testify to a date that it happened.

We previously determined that a rational jury could have concluded that I.V. was referring to her female sexual organ when she used the terms "line" and "genital area," and I.V. testified that appellant touched her "line" and her "genital area" with his penis. A rational jury also could have concluded from I.V.'s testimony that I.V. was younger than fourteen when this conduct occurred, because she testified that she was fourteen when she began to fight back and the abuse became less often then. Consequently, we conclude that the evidence is sufficient to support the conviction for aggravated sexual assault of a child. We resolve issue two against appellant.

**D. Indecency with a Child**

In issue three, appellant argues that the evidence is insufficient to support the conviction for indecency with a child as alleged in count two of the indictment in trial court cause no. 219-82232-2011.

The State alleged two counts of indecency with a child against appellant in that cause number—count two about which appellant complains, and count four. The trial court submitted both counts of indecency with a child to the jury, the jury returned two verdicts of guilty, and the jury assessed punishment in both. The trial court, however, rendered only one judgment on the two convictions. At the top of the judgment is typed, "Count II, IV." Because the trial court rendered only one judgment for both indecency-with-a-child convictions, even if we concluded that the evidence was insufficient to sustain the conviction under count two, we could not vacate the judgment because it was also rendered on count four, and appellant does not challenge the

sufficiency of the evidence on count four. Consequently, we cannot grant appellant the relief he seeks under issue three, and we do not need to decide it.

## III. DOUBLE JEOPARDY

Appellant's issue four states:

If appellant's conviction for continuous sexual abuse of a child stands, then his convictions for aggravated sexual assault of a child (214-82231-2011, count 4), indecency with a child (219-82232-2011, count 2)[,] sexual assault of a child (219-82232-2011, count 3) and indecency with a child (219-82232-2011, count 4) are barred by double jeopardy[.]

Appellant's entire argument under this issue states:

The second paragraph of count 1 of the indictment in 219-82231-2011 was alleged to have occurred on or about 9/1/2007 to 9/21/2009, and the allegation in count 4 of the indictment accuses appellant of committing the exact same act, with the same manner and means, on or about 9/1/2007.

The United States Constitution, Fifth Amendment and the Texas Constitution, Article 1, Section 14 protect an accused for [sic] being put in jeopardy twice for the same offense. A double jeopardy claim may be raised for the first time on appeal. Gonzales v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

To the extent appellant's argument is adequately briefed, it is only with respect to whether count four of trial court cause no. 219-82231-2011, alleging that appellant committed aggravated sexual assault of a child by causing I.V.'s female sexual organ to contact appellant's sexual organ, is subsumed within the offense of continuous sexual abuse of a child.

The Double Jeopardy Clause protects persons against multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991). When an appellant does not raise a double jeopardy claim in the trial court, as here, he must show that any double jeopardy violation is apparent on the face of the record. *See Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzales*, 8 S.W.3d at 642–45. We conclude that appellant has not carried his burden.

The trial court's charge authorized the jury to convict appellant of continuous sexual abuse of a child if it found that appellant committed two or more acts of aggravated sexual

–11–

assault of a child or indecency with a child. The jury was not required to agree on which of the acts it believed appellant committed. *See* TEX. PENAL CODE ANN. § 21.02(d). And when the jury is instructed on separate theories for an offense, a double jeopardy violation is not apparent on the face of the record if there is evidence to support a valid theory. *Langs*, 183 S.W.3d at 687.

Here, the jury returned a general verdict of guilty on the offense of continuous sexual abuse of a child. The general verdict could have been based on a finding that appellant engaged in two or more sexual acts constituting indecency with a child, and the evidence is sufficient to support that theory. I.V. testified that appellant touched her "girl section" or "line" with his hand on "many occasions" and that the abuse became less often when she began to fight back at age fourteen. This testimony was sufficient to allow a rational jury to conclude beyond a reasonable doubt that appellant committed indecency with a child by contact on two or more occasions and that I.V. was under age fourteen at the time. *See* TEX. PENAL CODE ANN. § 21.02(b)–(c)(2); TEX. CODE CRIM. PROC. ANN. art. 38.07; *Lee*, 186 S.W.3d at 655. Consequently, we conclude that appellant has not carried his burden to show a double jeopardy violation on the face of the record. We resolve issue four against him.

### IV. EVIDENTIARY RULINGS

In issues five and seven,[1] appellant argues that the trial court abused its discretion by overruling his objections to certain evidence. We review rulings on evidentiary matters for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the ruling if it lies within the zone of reasonable disagreement. *Id.*

### A. Comment on Appellant's Right to Remain Silent

Phyliss Jackson, the lead investigator in this case, testified in detail about her investigation. She testified that after appellant was arrested, she tried to talk to him because she

---

[1] There is no issue six in appellant's brief.

tries "to do that in all [her] cases." She said she advised appellant of his rights in Spanish through an interpreter and asked him if he wanted to waive his rights and speak to her. She said he responded that "he would unless it was about the night his wife kicked him out of the house."

Appellant did not object to the testimony, but complains on appeal that it was not admissible because it was a comment on his right to remain silent. He argues that "[p]reservation requirements do not apply . . . to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal." Appellant does not cite authority that this general statement of the law applies to this case, and we conclude that it does not apply. Appellant was required to object to the testimony in order to preserve this issue for our review. *See Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) (objection required for complaint on appeal about comment on post-arrest silence). In addition to his failure to object to this testimony, appellant elicited the same testimony during his cross-examination of Jackson when he asked her whether appellant, after hearing his rights, "basically shut down or chose not to go any further with the interview[.]" We resolve issue five against appellant.

### B. Carpet and "Tape Lifts"

In issue seven, appellant argues that the trial court abused its discretion by admitting into evidence several pieces of carpet and "tape lifts" from those carpet pieces because the State did not establish the proper foundation for the admission of that evidence.

At trial, the State asked Dr. Abbey Whitmarsh, an employee in the DNA and serology section of the Texas Department of Public Safety crime lab, to identify certain evidence related to carpet taken from appellant's home. She identified five pieces of carpet taken from appellant's master bedroom closet and five "tape lifts" from those pieces of carpet. She also explained what she meant by "tape lifts": she used pieces of tape to go over the surface of the carpet to collect

any trace evidence such as hairs or fibers, placed the tape on a transparency, and preserved it for later use by the trace evidence section.

Whitmarsh then testified that she tested the five pieces of carpet from the master bedroom closet by looking at them "under the alternate light source[.]" A previous witness had testified about how using an alternate light source caused certain biological evidence, such as fingernails, bone fragments, semen, urine, and saliva, to fluoresce in the presence of the light. Whitmarsh testified that she further tested the pieces that fluoresced with a presumptive test for semen and that one of the pieces of carpet from the master bedroom contained a stain that "was positive for the presumptive region for semen." She said she "extracted a small piece of that stain to make a slide from it and looked at it under a microscope, because that's how we confirm the presence of spermatozoa and that was a positive result." The State then offered the five pieces of carpet and "tape lifts" into evidence. Appellant objected on the basis of "improper foundation." The trial court overruled the objection.

On appeal, appellant argues that the State did not "attempt to lay any type of scientific foundation for the admissibility" of the carpet pieces, and Whitmarsh did not establish the reliability of the testing methods performed on the carpet. But appellant did not make those specific objections below. Instead, he made a general "improper foundation" objection without informing the trial court of the specific reason that the foundation was improper. *See* TEX. R. EVID. 33.1 (specific objection required unless objection obvious from context); *Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985) (objection that "proper predicate had not been laid" is too general to preserve error).

An objection to the reliability of evidence could be based on the validity of the underlying scientific theory, the validity of the technique applying the theory, whether the technique was properly applied to the evidence, or a combination of those. *See Hartman v. State*,

946 S.W.2d 60, 62–63 (Tex. Crim. App. 1997) (citing *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)). Appellant's general "improper foundation" objection did not inform the trial court exactly how the foundation was deficient, and the basis for the objection is not obvious from the context of the record. *See Bird*, 692 S.W.2d at 70; *Scherl v. State*, 7 S.W.3d 650, 651–52 (Tex. App.—Texarkana 1999, no pet.). Consequently, appellant's general objection did not preserve the issue of the reliability of the testing methods for our review. *See Bird*, 692 S.W.2d at 70; *Scherl*, 7 S.W.3d at 651–52. We resolve issue seven against appellant.

## V. CONCLUSION

We affirm the trial court's judgments.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

120548F.U05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUAN JOSE VAZQUEZ, Appellant

No. 05-12-00548-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-82231-2011.
Opinion delivered by Justice Lang-Miers, Justices O'Neill and Evans participating.

Based on the Court's opinion of this date, the judgments of the trial court are **AFFIRMED**.

Judgment entered this 14th day of October, 2013.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUAN JOSE VAZQUEZ, Appellant

No. 05-12-00549-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District Court, Collin County, Texas
Trial Court Cause No. 219-82232-2011.
Opinion delivered by Justice Lang-Miers, Justices O'Neill and Evans participating.

Based on the Court's opinion of this date, the judgments of the trial court are **AFFIRMED**.


Judgment entered this 14th day of October, 2013.


/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE