**UNITED STATES of America**

v.

**Kareem MILLHOUSE, Appellant.**

**No. 07–4551.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 21, 2009.

Opinion Filed: Sept. 29, 2009.

Albert S. Glenn, Esq., Karen M. Klotz, Esq., Robert A. Zauzmer, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

Rocco C. Cipparone, Jr., Esq., Haddon Heights, NJ, for Appellant.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Appellant Kareem Millhouse was convicted by a jury of three counts of bank robbery, two counts of armed bank robbery, one count of Hobbs Act robbery, and three counts of related firearms offenses. We will affirm the judgment of conviction.

**I.**

Millhouse was charged in connection with six separate robberies, all occurring in Philadelphia over a seven-week period in 2006. When he was arrested on the day of the final robbery, he provided a detailed written confession to the FBI as to all six robberies. An accomplice, Terrence Hawkins, was also charged with three of the robberies; Hawkins pled guilty and testified against Millhouse at trial.

Because we write only for the parties, we need not review the facts of each robbery or the extensive, if not altogether overwhelming, evidence of Millhouse's guilt. We note, however, that this evidence included surveillance photographs; the testimony of numerous victim tellers, store clerks, and others (including four who identified Millhouse at trial); the testimony of Hawkins; Millhouse's 14–page confession; and physical evidence including fingerprints, a palm print, a boot print, and DNA.

The events of May 1, 2006, however, are relevant to this appeal, and we will briefly describe them. On May 1, Millhouse robbed a Wine and Spirits Shoppe in Philadelphia at gunpoint, taking money and two bottles of cognac, while Hawkins waited outside in a blue Chevrolet Corsica. After that robbery, Hawkins drove Millhouse to the nearby East River Bank and waited in the car while Millhouse robbed the tellers at gunpoint, taking bags of cash which included bait money with prerecorded serial numbers. Millhouse and Hawkins fled the scene in the Corsica.

Two Philadelphia police officers, having received a radio report describing a Corsica in which two black males were driving, approached the Corsica with weapons drawn when they saw it stopped at a traffic light a few blocks from the bank. The officers ordered Hawkins and Millhouse not to move, but Hawkins disobeyed the order and caused the car to jump a curb and crash into an overpass support. Hawkins and Millhouse fled; Hawkins was arrested shortly thereafter. Millhouse was arrested two weeks later, following his robbery of Citizens Bank.

The police found a handgun on the ground outside the car and money and two bottles of cognac inside the car. Victims of both robberies identified the car, and the serial numbers of some of the currency found in the car matched the numbers of the bait money. A short distance from the crash site, officers found an East River Bank bag and a one-dollar bill, both containing reddish stains later confirmed to be blood. Similar stains were found inside the car.

At trial, victims of both robberies testified that, at the time of the robberies, Millhouse's wrist had been bleeding, and DNA analysis showed that the DNA found on the East River Bank bag, one-dollar bill, and inside the car was a complete match with his DNA. The government offered Benjamin Levin, a forensic scientist with the Philadelphia Police Department's DNA lab, as an expert in DNA testing, to testify both to his determination that Millhouse's DNA was a complete match with the DNA collected from the scene and his opinion as to the probability of finding a

similar match in an unrelated population. Millhouse objected primarily to that part of Levin's opinion having to do with population statistics and population frequency, arguing that the government failed to disclose these bases for the opinion in its submissions under Federal Rule of Criminal Procedure 16 and that this type of testimony was unreliable and should be excluded under Federal Rule of Evidence 702.

The District Court resolved the parties' discovery dispute by permitting Millhouse to voir dire Levin outside the presence of the jury so that Millhouse could "explore the basis of [Levin's] opinion," and gave Millhouse extra time in which to prepare cross-examination. In its Rule 702 analysis, the Court found that "the whole community relies on this type of information," and accepted Levin as an expert in forensic DNA analysis and interpretation. (App. at 264, 270.) Levin then testified before the jury that he used a computer program called PopStats and the Pennsylvania State Police Database to calculate the population frequency of Millhouse's DNA profile. He testified that the population frequency for Millhouse's DNA profile, representing the number of times that the profile would be found in the population, was 1 in 19.0 trillion for the African–American population, 1 in 18.0 trillion in the Caucasian population, and 1 in 2.53 trillion in the Hispanic population.

The last witness was Special Agent Thomas Perzichilli of the FBI, who witnessed Millhouse's written confession. In his confession, Millhouse stated: "I was just trying to get money to pay a drug debt so I would not get killed." (Supp. App. at 314.) The parties had agreed, prior to trial, that the word "drug" would be redacted from the statement and would not come in at trial. Agent Perzichilli, however, included the word "drug" when reading the confession to the jury although the written version, projected onto the jurors' monitors during the testimony, did not contain the word "drug." Millhouse moved for a mistrial, arguing that he was unfairly prejudiced by the agent's testimony. The District Court denied the motion, but included the following instruction in the jury charge:

> You will recall that Agent Perzichilli read the Millhouse written statement during his testimony. If Agent Perzichilli's reading is different from the text of the written statement that has been admitted into evidence and which you will receive, I instruct you to disregard Agent Perzichilli's deviation. The written copy is the evidence that you will have regarding the statement.

(App. at 379.)

After a five-day trial, the jury convicted Millhouse on all counts, and he was later sentenced to 894 months in prison and a five-year term of supervised release. He now appeals.

## II.

### A. Testimony of DNA Expert Levin

■ Millhouse argues that Levin's testimony as to DNA population frequency should have been excluded both because it was not included in the government's Rule 16 disclosures and because it was not reliable within the meaning of Federal Rule of Evidence 702. We review the District Court's decision for abuse of discretion. *United States v. Ford,* 481 F.3d 215, 217 (3d Cir.2007).

### 1. *Federal Rule of Criminal Procedure 16*

It is undisputed that the government's Rule 16 disclosure as to DNA expert Levin contained no mention of population frequency or population statistics. Assuming, without deciding, that this constituted a

violation of the government's Rule 16 obligations, the District Court did not abuse its discretion when it allowed Levin to testify despite the violation.

Rule 16(a)(1)(G) requires the government to produce a written summary of any expert testimony it seeks to offer at trial. If a party fails to comply with this Rule, the court may:

(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

(B) grant a continuance;

(C) prohibit that party from introducing the undisclosed evidence; or

(D) enter any other order that is just under the circumstances.

Fed.R.Crim.P. 16(d)(2).

We have held that a new trial is warranted based on the government's violation of Rule 16 only when the defendant has demonstrated that the district court's actions resulted in prejudice to him. *United States v. Lopez*, 271 F.3d 472, 484 (3d Cir.2001). The defendant must show "a likelihood that the verdict would have been different had the government complied with the discovery rules." *United States v. Davis*, 397 F.3d 173, 178 (3d Cir.2005) (internal citation and quotation omitted).

Although it may not always suffice, in this case the District Court adequately resolved the parties' dispute by permitting voir dire of Levin outside of the presence of the jury and giving the defense time in which to prepare for cross-examination. Indeed, the defense went on to conduct a searching and extensive cross-examination, eliciting testimony from Levin regarding the potential under-representation of African–American males in the Pennsylvania State Police database as compared with the actual population in Philadelphia, the potential for contamination of the sample, and Levin's calculation methods, which were done using the PopStats computer program rather than by hand. The defense also elicited from Levin an admission that, although Millhouse's DNA was a "complete match," the DNA could "match others completely" as well. (App. at 277, 294.)

In any event, Millhouse has not demonstrated that he was prejudiced by any purported Rule 16 violation. Most importantly, he does not contest Levin's testimony that his DNA was a complete match with the DNA recovered from the scene, and the evidence of Millhouse's guilt as to each of the May 1 robberies was overwhelming.[1]

### 2. *Federal Rule of Evidence 702*

Rule 702 provides that an expert may offer opinion testimony provided that the testimony is (1) based on sufficient facts or data, (2) the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. The District Court serves as a "gatekeeper" for the admissibility of scientific testimony, evaluating, as a preliminary matter, whether the expert's methodology is scientifically valid and can be properly applied to the facts at issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Ford*, 481 F.3d at 219–20. We have held that the reliability analysis is "lower than the merits standard of correctness" and is flexible in nature. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 247–48 (3d Cir.2008) (internal quotation omitted); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir.1994) (outlining several factors to be considered).

---

1. Thus, we reject Millhouse's argument that although the DNA evidence was only directly relevant to the May 1 robberies, the prejudicial effect infected all of the counts.

Millhouse argues that Levin's testimony regarding the process he used in analyzing the DNA demonstrates its unreliability, particularly because the African–American population of Philadelphia was under-represented in the Pennsylvania State Police database and, had it been properly represented, the likelihood of more persons having the same DNA as Millhouse would increase. Each of his concerns as to the DNA evidence, however, goes to the weight and not the admissibility of the evidence. The District Court did not abuse its discretion in finding that Levin's expert testimony was admissible under Rule 702.

## B. Denial of Motion for Mistrial

■ Millhouse argues that the District Court erred when it denied his motion for a mistrial based on Agent Perzichilli's reference to a "drug" debt. We review the denial of a motion for a mistrial based on a witness's allegedly prejudicial comments for abuse of discretion. *United States v. Lore,* 430 F.3d 190, 207 (3d Cir.2005). Specifically, we examine (1) whether the remarks were pronounced and persistent, creating a likelihood that they would mislead · and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken by the District Court. *Id.*

We need not dwell on this issue because the relevant factors do not begin to weigh in Millhouse's favor. First, far from being "pronounced" and "persistent," Millhouse complains of one word that was not reinforced by what the jurors saw on their monitors; further, the jurors were instructed that the written form was to prevail over any oral reading that differed. Second, even if Agent Perzichilli had not used the word "drug," evidence that Millhouse admitted being motivated by a "debt" would nonetheless constitute the evidence of motive he suggests was lacking. And, of course, the other evidence

against Millhouse was not merely strong—it was powerful.

## III.

We will affirm the judgment of conviction.