NO. 07-08-0134-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 21, 2009
_____

JOSE LEIJA CASTELLON, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 55,104-E; HONORABLE ABE LOPEZ, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Jose Leija Castellon, Jr., was indicted for theft of property valued at $20,000 or more but less than $100,000.[1] A jury convicted him of the offense and assessed punishment, enhanced by evidence of a prior conviction for burglary of a habitation, at fifteen years imprisonment and a fine of $2,000. On appeal, appellant challenges the testimony of the State's shoe print comparison expert witness and the legal sufficiency of the identification evidence. We will affirm.

_____

[1] Tex. Penal Code Ann. § 31.03(a),(e)(5) (Vernon Supp. 2009).

## Background

Shortly after 4:00 a.m. on June 26, 2006, Amarillo police officers responded to an alarm at a local convenience store. The establishment was not yet open for the day's business. A color video recording of views from store surveillance cameras revealed the source of the alarm. Three individuals clad in hooded coats and gloves used a small SUV to penetrate the front entrance of the store and break loose an automated teller machine mounted in the store's interior. The intrusion knocked over store shelves and scattered their contents. A box containing white sheets of paper landed on the hood of the SUV and fell to the sidewalk in front of the store entrance as the vehicle backed from the interior. The perpetrators then backed a pickup truck near the store entrance and with substantial effort wrestled the ATM into the vehicle's bed. In the course of the task, the box containing white sheets of paper was kicked and some of its contents scattered. At least two of the perpetrators then repeatedly stepped on some of the strewn papers. The SUV, a stolen vehicle, was left in an alley behind the store.

An eyewitness provided a description of the pickup. An officer responding to the store alarm saw a pickup with an ATM in the bed. A brief chase ensued. Before the pickup completely stopped, its occupants left the vehicle. Two ran west and one east. Officers set up a perimeter blockade of the area and went yard-by-yard in search of the three. In the search area, an officer saw a "shadow" run across a street. He located the individual in a near-by open garage. It was appellant, winded and sweating profusely. He wore dark tennis shoes. Appellant told police he was fleeing three would-be assailants who chased him from the house of a female. But he did not seem relieved at police

2

presence.  According to trial testimony, pedestrian traffic in the neighborhood was very uncommon at 4:00 a.m.  Officers took appellant into custody.  A detective investigating the case was unable to corroborate appellant's claim he fled attackers.

Meanwhile, police investigated the crime scene.  The white papers scattered on the ground in front of the store were comic book decals.  Some contained shoe prints.  A shoe print was also discovered on a sheet of paper found in the getaway vehicle.  The items bearing shoe prints and the shoes appellant wore when taken into custody were submitted for comparison to the Department of Public Safety's crime laboratory in Lubbock.

At trial, DPS trace analyst Brad Mullins testified for the State.  He explained the process of shoe print comparison.  Based on his comparison of the decals, paper and shoes Mullins opined that some of the shoe prints on the decals and the print on the piece of paper from the pickup were made by appellant's shoes.

The jury convicted appellant of the indicted offense and assessed punishment.  Appellant timely perfected appeal to this court.

Discussion

Shoe Print Comparison Testimony

Appellant's first issue challenges Mullins' qualifications to render an expert opinion on shoe print comparison and the reliability of his testimony.[2]

---

[2] Appellant's issue is a general complaint of the State's shoe print evidence.  His argument challenges Mullins' qualifications and the reliability of his opinions, but we do not

3

The trial court's decision on admissibility of expert testimony is reviewed for an abuse of discretion. *Alvarado v. State,* 912 S.W.2d 199, 216 (Tex.Crim.App. 1995). The decision will not be disturbed on appeal so long as it is within the zone of reasonable disagreement in light of the available evidence and the requirements of Rule of Evidence 702. Tex. R. Evid. 702; *see Kelly v. State,* 824 S.W.2d 568, 574 (Tex.Crim.App. 1992); *Hurrelbrink v. State,* 46 S.W.3d 350, 352 (Tex.App.–Amarillo 2001, pet. refused).

Under Rule 702, the trial court must determine whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury. *See Jackson v. State,* 17 S.W.3d 664, 670 (Tex.Crim.App. 2000). Ordinarily scientific evidence is offered through the opinion testimony of an expert witness. The burden is on the proponent of expert testimony to prove by clear and convincing evidence at a preliminary "gatekeeper" hearing outside the presence of the jury that the testimony is trustworthy. *Hurrelbrink,* 46 S.W.3d at 352. The trial court must make this pre-admission determination whether the science in question is well established or novel. *Jackson,* 17 S.W.3d at 670. From the presentation at the gatekeeper hearing, the trial court must be satisfied that (1) the witness qualifies as an expert by reason of knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is appropriate for expert testimony; and (3) admitting the expert testimony will assist the fact-finder in deciding the case. *Vela v. State,* 209 S.W.3d 128, 131 (Tex.Crim.App. 2006); *Rodgers v. State,* 205 S.W.3d 525, 527 (Tex.Crim.App. 2006); *Alvarado v. State,* 912 S.W.2d at 215-16. These conditions are commonly known as (1) qualification; (2) reliability; and (3) relevance. *Vela,* 209 S.W.3d at 131.

---

read it as challenging the relevancy of Mullins' expert testimony.

Qualification

Qualification is distinct from reliability and relevance and thus should be evaluated independently. *Vela,* 209 S.W.3d at 131. The proponent of expert testimony must establish that the witness possesses "knowledge, skill, experience, training, or education" and that the testimony of the expert will "assist the trier of fact." *See* Tex. R. Evid. 702. The qualification inquiry considers first whether the witness possesses sufficient background in a particular field, and second whether that background "goes to the very matter on which [the witness] is to give an opinion." *Vela,* 209 S.W.3d at 131 (*quoting Broders v. Heise,* 924 S.W.2d 148, 153 (Tex. 1996)).[3] Said simply, there must be a "fit" between the subject matter in issue and the familiarity of the expert. *Broders,* 924 S.W.2d at 153. In determining whether the trial court abused its discretion in evaluating the qualifications of an expert, an appellate court may consider several criteria: (1) the complexity of the field of expertise; (2) the conclusiveness of the expert's opinion; and (3) the centrality of the area of expertise to resolution of the case. *Rodgers,* 205 S.W.3d at 528. "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Id.* at 527-28. An appellate court therefore rarely disturbs the trial court's determination that a particular witness is or is not qualified to testify as an expert. *Id.* at 528 n.9.

---

[3] Texas Rule of Evidence 702 applies identically in civil and criminal cases. We may, therefore, look to Texas civil cases for guidance in its application. *See Roise v. State,* 7 S.W.3d 225, 234 n.3 (Tex.App.–Austin 1999, pet. refused).

Appellant argues Mullins was not qualified to render an expert opinion on identification by shoe print comparison. According to appellant, Mullins "acted as nothing more than a lab technician following a set of instructions or protocols."

According to his trial testimony, Mullins is a trace element analyst for the DPS. He holds a bachelor of science degree and began work for the DPS in 1999. Since 2003, he has worked in "impressions." He has primarily received in-house training involving three steps: from familiarity of the discipline to passing all competency tests to supervised casework. Training then became ongoing and included classes taught by experts in the field. Mullins kept abreast of publications in the discipline and protocols of the DPS. At the time of trial, he had worked over 100 impression cases but had not previously testified in the area. On cross-examination, Mullins stated he was not aware of a published error rate for shoe print comparison. He lacked familiarity with the works of three authors in the discipline named by appellant's counsel.

The field of expertise in shoe print comparison is not complex. *Rodgers,* 205 S.W.3d at 528. Nor is the degree of scientific expertise required high, particularly when the discipline is compared with, for example, DNA profiling. *Id.* Indeed, Texas courts have long admitted lay and expert testimony on shoe print comparison. *Id.* at 532. Here, the jury was able to examine some of the items compared by Mullins. Moreover, other evidence linked appellant to the theft of the ATM machine. On this record, we cannot say the trial court abused its discretion by finding Mullins qualified to render opinion testimony on shoe print comparison.

6

Reliability

The Court of Criminal Appeals held in *Kelly,* 824 S.W.2d 568, that Rule 702 requires satisfaction of a three-part reliability test before novel scientific evidence is admissible: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Id.* at 573.

Factors relating to the reliability determination include: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person who applied the technique on the occasion in question. *Kelly,* 824 S.W.2d at 573. Subsequently the court held that the *Kelly* analysis applies to all scientific evidence, novel or not. *Hartman v. State,* 946 S.W.2d 60, 62-63 (Tex.Crim.App. 1997).

It is not necessary in every instance that a party seeking to present evidence of a scientific principle satisfy the first and second prongs of the *Kelly* test. *Hernandez v. State,* 116 S.W.3d 26, 28-29 (Tex.Crim.App. 2003) (per curiam). A complete *Kelly* "gatekeeper" hearing is necessary only at the inception of judicial consideration of a specific type of forensic scientific evidence. *Id.* Thereafter, it is unnecessary for trial courts to re-invent

7

the scientific wheel in every trial. *Id.* If the Court of Criminal Appeals, this court, or another Texas appellate court has previously determined the validity of a particular scientific theory or technique, then the party offering the expert testimony need not satisfy *Kelly's* first two criteria. *See id.* at 27. The trial court and a reviewing court can rely on prior opinions and take judicial notice of those findings. *See id.* at 31 n.12.

For decades, our Court of Criminal Appeals has recognized that shoe print impression testimony is generally admissible. *Rodgers,* 205 S.W.3d 532.

> [T]he unbroken line of decisions of this State, and every other State with which we are familiar, hold . . . that a witness who has made measurements of the tracks, and the foot or shoe of the defendant; or who has made some such comparison between the tracks and the shoes of the defendant, as placing the shoe in the tracks; Or who has detailed peculiarities in the tracks on the ground which correspond with the shoes, or with the proven or admitted tracks of the defendant, that in either of these cases or instances the witness may give his opinion as to the similarity of the tracks.

*Martinez v. State,* 169 Tex.Crim. 229, 232-33, 333 S.W.2d 370, 373 (1960) (*quoting Mueller v. State,* 85 Tex.Crim.Rep. 346, 354, 215 S.W. 93, 97 (1919)). "It would seem to be a generally accepted proposition that for the purpose of identifying the accused as the guilty party, evidence of the correspondence of the accused's shoes . . . to tracks found near the scene of the crime is admissible." *Rodgers,* 205 S.W.3d at 532. n.25 (*quoting* E. LeFevere, Annotation, Footprints as Evidence, 35 A.L.R.2d 856, *2 (1954-Updated July 2005)); *see also United States v. Ford,* 481 F.3d 215, 218 n.4 (3d Cir. 2007) (*citing* Terrence F. Kiely, *Forensic Evidence: Science and the Criminal Law,* 281-314 (2d ed. 2006) (shoe print identification evidence has long been admitted)). Here, at the conclusion

of the gatekeeper hearing the trial court noted that in prior cases it had admitted similar impression comparison evidence.

A distinction lies between the forensic identification sciences, such as shoe print identification,

> [A]nd the type of science typically at issue in *Daubert* [4] *cases.* Expert testimony based on empirical science does things like determining what substance something is (e.g., what is that white powder?) or measuring the quantity of something (e.g., how much alcohol is in the murder victim's blood?). Forensic identification science has a different objective. Forensic identification evidence serves to connect a crime scene object or mark to the one and only source of that object or mark. The reliability of these sciences rests upon the experience and observational powers of their practitioners. While a strict application of the *Daubert* factors to forensic identification sciences might be a fruitless exercise, due to the inherently experiential nature of this type of expertise, the [trial court] will be in the best position to make this determination.

*Ford,* 481 F.3d 215, 219 n.5 (citations and internal quotation marks omitted).

Given the cited pronouncements of our State's highest criminal court, we find the trial court's finding that shoe print comparison evidence is valid was not an abuse of discretion.

We now turn to the validity of the technique applying shoe print comparison and the propriety of its application by Mullins in the underlying case. *See Kelly,* 824 S.W.2d at 573.

---

[4] *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

9

A substantial record on appellant's reliability challenge exists, in part because it includes the testimony of Mullins during the gatekeeper hearing and before the jury.[5]

Mullins testified that impressions is a recognized area of forensic science subject to agency protocols. As we have noted and reiterate for this discussion, the validity of shoe print comparison has long been accepted as a valid means of connecting a crime scene object or mark to the source of that object or mark.

During the gatekeeper hearing, and with fuller elaboration before the jury, Mullins testified of the process of shoe print comparison. The analysis begins with a shoe print impression presented by a photograph or tangible item. An impression is a pattern. It could be in dust or three dimensional, such as in the soil. The analyst documents the features of the impression. A determination of shoe design and size is made. The analyst considers the presence or not of "accidentals." Accidental characteristics are blemishes on the shoe, such as cuts, scratches or a rock imbedded in the tread pattern. A test impression is made of the bottom of the shoe by inking it with latent print ink and applying the shoe sole to white paper. An overlay, or transparency, is made of the impression. The overlay is for comparison with the test impression of the shoe. It permits determination that the elements of the shoe, such as the shoe pattern and size, align. Within these parameters the analyst looks for accidentals. A comparison is made between the impression and the shoe test impression. If matching accidentals appear on the

---

[5] Through interposed objections and a "running objection," appellant pursued his reliability challenge during the trial testimony of Mullins. *See Rodgers,* 205 S.W.3d at 531-32 (court of appeals erred by limiting scope of inquiry to initial questions of expert since defendant continued challenge of expert during trial testimony).

10

impression and the shoe test impression, the analyst can draw a conclusion that no shoe, other than the one under analysis, made the impression. On the other hand, the absence of accidentals precludes ruling out another shoe of the same design and style as the source of the impression. Accidentals are thus the key to comparison and elimination of other shoes.

Here Mullins testified he applied this technique in reaching his opinions. Noting accidentals common to appellant's shoes and the impressions, Mullins opined that no shoe but appellant's could have made the impression on three of the decals and the paper from the getaway vehicle. Conversely, the other decal sampled did not contain an accidental and therefore could have been produced by any shoe of like size and brand as appellant's.

As noted, shoe print comparison is not a complex field. *Rodgers,* 205 S.W.3d at 533.[6] The jury heard Mullins' comparison testimony and had before it photographs of appellant's shoes and the decals used for comparison. It was free to assign what weight and credibility it chose to his opinions.

We conclude that the trial court did not abuse its discretion in impliedly finding the technique of shoe print comparison valid and properly applied by Mullins to reach his opinions in the underlying case. We overrule appellant's first issue.

---

[6] For this conclusion, the Court of Criminal Appeals in *Rodgers,* 205 S.W.3d at 533, cited with approval *State v. Jeter,* 609 So.2d 1019 (La.Ct.App. 2d Cir. 1992). There, the appellate court found no error in the trial court's ruling that a self-taught "expert" in shoe print identification, relying on comparison of shoe size, pattern, and condition with photographs and measurements of shoe prints at the crime scene, could opine that the shoes of the accused matched the crime scene prints. The appellate court observed the opinion could properly have been submitted as that of a lay witness. *Id.* at 1022-23.

11

Denial of Appellant's Motion for Directed Verdict

Appellant complains by his second issue that the trial court erred in denying his motion for directed verdict. The essence of the complaint is the State's evidence of identification was legally insufficient.

The trial court's denial of a motion for directed verdict is reviewed as a challenge to the legal sufficiency of the evidence. *Williams v. State,* 937 S.W.2d 479, 482 (Tex.Crim.App. 1996). We therefore view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95 (*citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992)). The identity of a perpetrator may be established through direct or circumstantial evidence. *Earls v. State,* 707 S.W.2d 82, 85 (Tex.Crim.App. 1986). Proof of identity by circumstantial evidence is not subject to a more rigorous review than proof by direct evidence, since both are equally probative. *See McGee v. State,* 774 S.W.2d 229, 238 (Tex.Crim.App. 1989).

Following a chase of the getaway vehicle, and the flight of its occupants on foot, appellant was found in an open garage winded and sweating profusely. It was an early

hour of the day not known for pedestrian traffic in the area. Appellant wore dark shoes as did the individuals depicted in the store surveillance video. The video clearly depicts the perpetrators' struggle to load the ATM in the bed of the getaway vehicle. In the course of this effort, at least two of the thieves repeatedly stepped on the white decals strewn on the sidewalk in front of the store. When contacted in the garage by police, appellant told of fleeing would-be attackers. Yet appellant displayed no relief at the protective presence of police. And police were unable to corroborate appellant's story. Mullins testified that two decals found in front of the store and a sheet of paper from the floorboard of the getaway vehicle contained appellant's right shoe print. Another decal contained his left shoe print. From the detailed video, the jury was able to follow the decals from the store to the sidewalk and observe foot contact with the perpetrators. It had in evidence the decals and photographs of appellant's shoes and heard Mullins' comparison opinions matching appellant's shoes to some of the decals and the sheet of paper. When the evidence and reasonable inferences therefrom are viewed in the light most favorable to the verdict we find a rational juror could have found beyond a reasonable doubt that appellant committed the offense for which he was indicted. Finding the evidence legally sufficient, we conclude the trial court did not err in denying appellant's motion for directed verdict.

We overrule appellant's second issue and having overruled his two issues, affirm the judgment of the trial court.

James T. Campbell
Justice

Publish.

13