

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00053-CR
_____

MICHAEL ANTHONY MARTINEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 75,036-C; Honorable Ana Estevez, Presiding

February 11, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Michael Anthony Martinez, appeals from his conviction by jury of the offense of burglary of a habitation[1] with the intent to commit another felony, to-wit: injury to an elderly person,[2] enhanced by a prior felony conviction and the resulting sentence of

---

[1] *See* TEX. PENAL CODE ANN. § 30.02(a) (West 2019). As indicted, the offense was punishable as a first degree felony. *Id.* at § 30.02(d).

[2] *See* TEX. PENAL CODE ANN. § 22.04 (West 2019).

sixty years of imprisonment.[3]  He challenges his conviction through one issue—whether the trial court reversibly erred by allowing opinion testimony over Appellant's relevance and 702 objections.  We will affirm the judgment of the trial court.

## BACKGROUND

The day after Christmas in 2017, two people burglarized the home of seventy-five-year-old Gwenlyne Pike.  Pike was at home that evening when she heard the doorbell ring.  She had been receiving a number of packages and assumed it was another.  She went to the door, opened it, and found a person with a gun.  That person threatened her and backed her down her hallway toward her bedroom.  Pike realized the person holding the gun looked familiar.  The intruder with the gun told a second intruder to tie Pike up.  The second intruder did so but did not adequately restrain her because she was able to quickly break free.  At first, she grabbed the first intruder's gun and the two struggled for possession of it.  During the struggle, the intruder "was banging [Pike's] head on the floor."  Pike testified that her head was "pound[ed] into the floor . . . enough to bruise me up pretty good and hurt."  Both Pike and the intruder lost control of the gun and the intruder moved to locate it.  Pike "took off for [her] nightstand where [she] knew [her] gun was."  Once she had obtained her gun, Pike turned around and threatened to shoot anyone who came through the door.  At that point, she called 911.  When officers responded, she told them her television, laptop, and purse were missing.

---

[3] TEX. PENAL CODE ANN. § 12.42(c)(1) (West 2019) (providing punishment for repeat and habitual offenders).  Because Appellant pleaded "true" to the enhancement allegation, the offense was punishable by imprisonment for life, or for any term of not more than 99 years or less than 15 years, and a fine of up to $10,000.

Shortly after the burglary, Appellant was identified trying to pass a check belonging to Pike at a nearby store and he made a similar attempt at another store. Upon investigation, items from Pike's house were later found in the car Appellant and his companion were driving.

At trial, Pike testified that Appellant was the person who burglarized her home and assaulted her and she said "No, I don't" when asked whether she had any doubts as to that identification. She also selected Appellant's photograph out of a photographic line-up prior to trial. During the line-up, Pike said Appellant's face was familiar, but she was not sure why. Once she was informed of Appellant's name, she was able to remember, noting she had hired him in the past to do some work in her home.

During the investigation of the burglary, Roberto Cisneros, an Amarillo police crime scene investigator and fingerprint identification expert, took gel lifts of shoe prints on the tile floor of Pike's home. He later photographed the gel lifts and compared the photographs to the soles of the shoes Appellant was wearing when he was arrested. That evidence was admitted at trial over objections made by Appellant. Cisneros then compared the photographs of the gel lifts to the photographs of the soles of Appellant's shoes and testified the characteristics of the gel lifts and Appellant's shoes "are very similar." He also said the prints did not match photographs of the shoes police officers were wearing at the crime scene. Appellant objected to Cisneros's testimony, but the trial court overruled the objections. It is the admission of this testimony and evidence Appellant challenges by this appeal.

**ANALYSIS**

In his sole issue on appeal, Appellant contends the trial court reversibly erred when it allowed Cisneros to testify about the shoe impressions sharing characteristics with Appellant's shoes over the asserted relevance and Rule 702 objections, without a hearing pursuant to Rule 104. *See* TEX. R. EVID. 104, 401, 702. A trial court is charged with the responsibility of determining preliminary questions about whether a witness is qualified, a privilege exists, or evidence is admissible. *Id.* at Rule 104. As such, relevancy is a preliminary question which the trial court must determine with respect to every piece of evidence presented at trial. Pursuant to Rule 104, a hearing on such preliminary questions must be conducted outside the hearing of the jury if: (1) the hearing involves the admissibility of a confession in a criminal case; (2) a defendant in a criminal case is a witness and so requests; or (3) justice so requires. *Id.* When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. *Id.* It should be noted, however, that this rule does not mandate a hearing be held with respect to every piece of evidence offered; it merely requires that if a hearing is held touching on these matters, it must be conducted outside the hearing of the jury.

Here, Appellant argues there was insufficient evidence connecting him to the gel print, thus rendering that particular piece of evidence irrelevant. He argues the trial court should have held a hearing under Rule 104(b) and exercised its function as gatekeeper to exclude such testimony absent a showing connecting Appellant to the gel print. Further, during that hearing, the trial court should have determined whether Cisneros's opinion testimony was admissible pursuant to Rule 702. Because the trial court did not

hold such a hearing, Appellant asserts, it abdicated its role as a gatekeeper and abused its discretion.

The admission of opinion testimony is reviewed on appeal on the basis of an abuse of discretion standard of review. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010) (citing *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997)). In ruling on the admissibility of opinion testimony, trial judges must act as a true "gatekeeper" when evaluating the relevance and reliability of expert testimony. *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). The trial court's decision to admit or deny such testimony "will not be disturbed on appeal so long as it is within the zone of reasonable disagreement in light of the available evidence and the requirements of Rule of Evidence 702." *Castellon v. State*, 302 S.W.3d 568, 571 (Tex. App.—Amarillo 2009, no pet.) (citations omitted).

Under Rule 702, the trial court must determine whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury. *Castellon*, 302 S.W.3d at 571 (citing *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000)). Scientific evidence is usually offered through the opinion testimony of an expert witness. *Id.* Before admitting such testimony, the trial court must be satisfied that (1) the witness qualifies as an expert by reason of knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is appropriate for expert testimony; and (3) admitting the expert testimony will assist the fact finder in deciding the case. *Castellon*, 302 S.W.3d at 571 (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006); *Alvarado v. State*, 912 S.W.2d 199, 215-16

(Tex. Crim. App. 1995)).  These conditions are commonly known as (1) qualification; (2) reliability; and (3) relevance.  *Castellon*, 302 S.W.3d at 571 (citing *Vela*, 209 S.W.3d at 131).  Under Rules 104(a) and (c) as well as Rule 702, all three criteria must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted.  *Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992).

Shoe print impression testimony has been held to be generally admissible.  *Castellon*, 302 S.W.3d at 573 (citing *Rogers*, 205 S.W.3d at 532).  The Court of Criminal Appeals said many years ago:

> [T]he unbroken line of decisions of this State, and every other State with which we are familiar, hold . . . that a witness who has made measurements of the tracks, and the foot or shoe of the defendant; or who has made some such comparison between the tracks and the shoes of the defendant, as placing the shoe in the tracks; or who has detailed peculiarities in the tracks on the ground which correspond with the shoes, or with the proven or admitted tracks of the defendant, that in either of these cases or instances the witness may give his opinion as to the similarity of the tracks.

*Castellon*, 302 S.W.3d at 573 (citing *Martinez v. State*, 333 S.W.2d 370, 373 (Tex. Crim. App. 1960) (quoting *Mueller v. State*, 215 S.W. 93, 97 (Tex. Crim. App. 1919)).

Here, when the State sought the introduction of the photographs depicting the shoe prints, Appellant objected on grounds of relevance and Rule 702.  The court permitted some questioning of Cisneros outside the presence of the jury.  Cisneros said he did not intend to offer testimony that the imprints identified a particular person who was at the scene.  The court then listened to arguments of counsel, during which the State told the court Cisneros would testify only that the shoe imprints had the same characteristics as Appellant's shoes.  While the record does not reflect this was referenced as a Rule 104(a) hearing, the court complied with the rule by allowing the parties to conduct an examination

6

of the witness and to present their respective arguments outside the presence of the jury before it determined the admissibility of the evidence. After listening to the witness and the parties' arguments, the court overruled Appellant's objections, admitted the photographs of the shoe prints, and permitted Cisneros to testify about his observations.[4]

On appeal, Appellant does not directly challenge Cisneros's qualifications or the reliability of his methods. Instead, Appellant seems to focus on the relevance aspect of the inquiry so we will do the same in our analysis here.

Cisneros testified he took photographs of the gel lifts he made of the shoe prints he found at Pike's home. He also took photographs of the shoes Appellant was wearing when he was arrested. He photographed the "two side by side." He then physically compared them, "using rulers." He then told the jury that "[l]ooking at the impression and the shoe itself, characteristics of both are very similar, if not the same . . . [t]he totality of the shoe impression, they are both very similar." He also agreed that looking at the ruler, the "incremental measurements" stayed the same between the shoes and the gel lifts.

During cross-examination, Cisneros admitted he was "not a shoe impression or shoe print expert." He said the "only analysis that [he] did was put them side by side. Is very basic. And I looked at the shoe—the gel lifts—the shoe impressions that I lifted—side by side next to the shoe itself; and, ultimately, all I can say for certain is that they are characteristically similar as far as the way they look." He told the jury he did not obtain a full shoe print from any shoe when he was taking gel lifts of shoe prints at Pike's house.

---

[4] We note that even if we do not construe this as a hearing pursuant to Rule 104, the failure to hold such a hearing is reviewed for harmless error under Rule 44.2(b). *Sherl v. State*, 7 S.W.3d 650, 655 (Tex. App.—Amarillo 1999, pet. ref'd) (citations omitted). Given the record before us, any failure to hold a formal Rule 104 hearing is harmless because such error did not affect the jury verdict or had but a slight effect.

He also admitted that it was likely that the prints Cisneros lifted "would match hundreds of thousands, if not more, tennis shoes." And, he acknowledged he could not tell the jury "that the prints that [he] lifted don't come from one of those hundreds of thousands of other shoes." During re-direct examination, however, Cisneros agreed that he eliminated the investigating officer's shoes and boots in making his comparison between Appellant's shoes and the gel lifts.

The record shows Cisneros's testimony regarding his comparison of the gel lifts and the impression of Appellant's shoes was not an opinion that Appellant's shoes made the impression seen in the gel lifts. It was merely his conclusion that the two were circumstantially similar enough that a juror could draw a reasonable inference from that evidence that Appellant was in Pike's home the night of the burglary. Cisneros said only that the gel imprint he lifted from the tile of Pike's home was similar to or consistent with Appellant's shoe and was not like any of the officers' footwear.[5]

Other evidence tied the gel lifts to the scene of the crime and the shoes being compared to Appellant. As such, each piece of evidence was independently related to the offense being tried and the jurors were free to draw reasonable inferences or conclusions from that circumstantial evidence. This type of evidence has long been found to be admissible and we see no reason to reach a different conclusion here. *See, e.g., Frankenfield v. State*, No. 03-05-00715-CR, 2008 Tex. App. LEXIS 7920, at *40 (Tex. App.—Austin Oct. 16, 2008, no pet.) (mem. op., not designated for publication).

---

[5] Alternatively, Appellant argues there were "insufficient similarities between the two to establish relevance." Where a minimum threshold for comparison has been established sufficient to satisfy the court, such an argument goes to the weight of the evidence, not its admissibility.

Furthermore, even assuming the trial court erred in permitting Cisneros to testify regarding his comparison of the shoe prints and the related photographs, we find any error harmless. Texas Rule of Appellate Procedure 44.2 governs the assessment of harm in criminal cases. *Sherl v. State*, 7 S.W.3d 650, 655 (Tex. App.—Amarillo 1999, pet. ref'd) (citing TEX. R. APP. P. 44.2). The admission of evidence that should have been excluded under the rules of evidence is usually non-constitutional error subject to a harm analysis under Rule 44.2(b). *Johnson v. State*, No. 02-17-00021-CR, 2018 Tex. App. LEXIS 1611, at *5 (Tex. App.—Fort Worth Mar. 1, 2018, no pet.) (mem. op., not designated for publication) (citations omitted). Under Rule 44.2(b), we disregard the error if it did not affect the defendant's substantial rights. *Id.* (citing TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied, 526 U.S. 1070, 119 S. Ct. 1466, 143 L. Ed. 2d 550 (1999)). An error affects a defendant's substantial rights when it has a "substantial and injurious effect in determining the jury's verdict." *Johnson,* 2018 Tex. App. LEXIS 1611, at * 5 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). On the other hand, an error does not affect a substantial right if we have a "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson,* 2018 Tex. App. LEXIS 1611, at *5-6 (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Johnson,* 2018 Tex. App. LEXIS 1611, at * 6 (citing *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim.

App. 2002)). We consider "whether the error, either alone or in context, likely moved the jury from a state of nonpersuasion to a state of persuasion concerning [the defendant's] guilt." *Johnson*, 2018 Tex. App. LEXIS 1611, at *6 (citing *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (plurality op.), *cert. denied*, 532 U.S. 944, 121 S. Ct. 1407, 149 L. Ed. 2d 349 (2001)).

The shoe print testimony and accompanying photographic evidence made up a very small part of the evidence admitted against Appellant. The record contains ample evidence supporting the identification of Appellant as the person who burglarized Pike's home and injured her. That evidence included Pike's identification of Appellant in a pretrial photographic line-up two days after the burglary as well as an in-court identification of Appellant as the person who burglarized her home and assaulted her. Other evidence of Appellant's guilt included police testimony regarding his attempts to pass a check from Pike's checking account at two businesses shortly after the burglary and testimony that a store employee positively identified Appellant as the person attempting to pass those checks. The record also shows Appellant drove a gray Cadillac and several photographs admitted into evidence show items from Pike's home in a car with gray interior. Other evidence showed checks from Pike's account, not written by her, made out to Appellant. The jury also had before it evidence of Appellant's inconsistent stories concerning the burglary and evidence police discovered refuting his version of events. While both parties discussed the shoe imprint evidence and associated testimony during their closing arguments, we cannot say it had such an impact as to have unduly influenced the jury's verdict. Because such error, if any, was harmless, we resolve Appellant's issue against him.

**CONCLUSION**

We overrule Appellant's sole appellate issue and affirm the judgment of the trial court.



                                        Patrick A. Pirtle
                                            Justice



Do not publish.